**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lewis R. KULCZYK,**
**Defendant–Appellant.**

**No. 89–30261.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1991.

Decided April 22, 1991.

As Amended on Denial of Rehearing
July 11, 1991.

Michael J. Hemovich and Brian T. Butler, Hemovich, Nappi, Oreskovich & Butler, Spokane, Washington, for defendant-appellant.

Kim R. Lindquist, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellee.

Before WIGGINS, BRUNETTI and T.G. NELSON, Circuit Judges.

WIGGINS, Circuit Judge:

Lewis R. Kulczyk appeals the district judge's denial of his motions for acquittal and for a new trial. The judge entered judgment on a jury's verdict finding the appellant guilty on eleven counts of mail fraud, 18 U.S.C. § 1341, and three counts of witness tampering, 18 U.S.C. § 1512. Kulczyk argues that the evidence adduced at trial does not support a conviction on the witness tampering charges. He also argues that the district judge abused his discretion in denying the motion for a new trial based on newly discovered evidence. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.

## BACKGROUND

Kulczyk was indicted by an Idaho federal grand jury charging him with one count of conspiracy (Count 1), eleven counts of mail fraud (Counts 2–12), and five counts of witness tampering (Counts 13–17). The mail fraud charges were based on a scheme to defraud several insurance companies by submitting claims for "stolen" logging equipment that the appellant had in fact hidden. Kulczyk intended to move two pieces of machinery, a feller-buncher and a skidder, from their normal site to another piece of property that he owned, where he intended to conceal the machines. The witness tampering charges were based on the appellant's attempts to persuade various persons to lie to FBI investigators, the grand jury and again at trial. After an initial mistrial, a second jury found Kulczyk guilty on eleven counts of mail fraud and three counts of witness tampering.[1]

Kulczyk moved for a judgment of acquittal as to the witness tampering charges at the close of the government's case and at the end of the trial. The motion was denied both times. After the verdict, Kulczyk filed motions for a judgment of acquittal and a new trial. The new trial motion was based on the appellant's claim that he had discovered significant new evidence. When those motions were denied, the judge sentenced the appellant and entered judg-

---

1. The government voluntarily dismissed one witness tampering charge (Count 16) before trial, the conspiracy count was dismissed during trial, and the jury found Kulczyk not guilty on another tampering charge (Count 14).

ment.   Kulczyk filed a timely notice of appeal.

## DISCUSSION

### A.  THE WITNESS TAMPERING CONVICTIONS

Each tampering charge was based on an attempt by Kulczyk to persuade a different person to testify falsely concerning the insurance fraud scheme.   Count 13 charged that the appellant knowingly engaged in misleading conduct toward Larry Martin with the intent to cause Martin to lie to investigators and in official proceedings. Martin, an employee of the appellant, had assisted in concealing the allegedly stolen equipment.   During the course of the FBI's investigation, Kulczyk requested that Martin falsely state that he had made two trips to the site from which the machines were supposedly stolen, when in fact he had made only one.   Martin agreed to lie to that extent, but no further.

Count 15 charged that Kulczyk knowingly engaged in misleading conduct toward Robert Bowen with the intent to cause Bowen to lie to investigators and in official proceedings.   Kulczyk asked Bowen to testify that he and Kulczyk were working on a job together at another location during the period when the machines were allegedly stolen.   Bowen, in addition to knowing that the story was untrue, also had appointment book entries to indicate what he had actually done on the days in question.

Lastly, Count 17 charged that Kulczyk knowingly intimidated and/or engaged in misleading conduct toward Les Williams with the intent to cause Williams to lie to investigators and in official proceedings. Kulczyk promised to pay Williams to testify that Williams' father and Larry Martin were actually responsible for stealing the machinery.   The appellant also threatened to have Williams killed if he did not cooperate.

Kulczyk argues that these allegations do not constitute witness tampering as that offense is defined in 18 U.S.C. § 1512, the statute under which he was convicted.[2] Specifically, he contends that the provision in that statute concerning "misleading conduct toward another person" applies only to cases where the defendant has misled, or attempted to mislead, the witness himself. Kulczyk argues that, because Martin, Bowen and Williams all knew that the story Kulczyk asked them to tell was false, he cannot be found to have engaged in misleading conduct toward them.[3]   The appellant concedes that he asked the witnesses to mislead the FBI, the grand jury and the jurors at trial, but he contends that such conduct is not covered by § 1512.[4]   This Court reviews questions of statutory interpretation de novo.   *United States v. Polizzi*, 801 F.2d 1543, 1547 (9th Cir.1986).

In support of his position, the appellant relies on the Second Circuit's decision in

---

2.  As we discuss below, § 1512 was amended in 1988 to remedy the problem raised by this appeal.   During the period relevant to this case, however, that section provided in part:

"§ 1512.   Tampering with a witness, victim, or an informant—
(a) Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
    (1) influence, delay or prevent the testimony of any person in an official proceeding;
—
—
shall be fined not more than $250,000 or imprisoned not more than ten years, or both."
18 U.S.C. § 1512 (1982).   The term "misleading conduct" is defined to mean, among other things, "knowingly making a false statement."
18 U.S.C. § 1515(a)(3)(A).

3.  As indicated, Count 17, involving Kulczyk's dealings with Les Williams, alleged that the appellant threatened to have Williams killed if he did not cooperate.   To the extent that it is based on that threat, Count 17 differs from Counts 13 and 15, which are based solely on the misleading conduct provision of § 1512.   The significance of that difference is discussed below.

4.  The appellant is not entirely clear as to whether this is a challenge to the sufficiency of the evidence, or a matter of an improper jury instruction.   The record contains both the tampering instructions actually given, and the ones Kulczyk requested the district judge to give.   At oral argument, Kulczyk's counsel characterized the appeal as alleging insufficient evidence. However framed, the issue for us to decide is the same:   on the facts presented at trial, can the guilty verdicts on the witness tampering charges under § 1512 be allowed to stand?

United States v. King, 762 F.2d 232 (2d Cir.1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1203, 89 L.Ed.2d 316 (1986). In that case, the Court affirmed the district court's order vacating a conviction under § 1512 on the grounds that the evidence did not support a conviction under that statute. During an investigation into a counterfeiting scheme, King requested that a witness named Orgovan conceal King's involvement, promising that he would be financially rewarded for cooperating. As in Kulczyk's case, King's indictment charged that he had engaged in misleading conduct toward another person. The district judge vacated the jury's guilty verdict on the tampering charge, finding that " 'King, simply and flat-out, tried to persuade Orgovan to lie' to mislead the government." *Id.* at 237 (quoting *United States v. King,* 597 F.Supp. 1228, 1231 (W.D.N.Y.1984)). The Court of Appeals held that:

> Since the only allegation in the indictment as to the means by which King induced Orgovan to withhold testimony was that King misled Orgovan, and since the evidence failed totally to support any inference that Orgovan was, or even could have been, misled, the conduct proven by the government was not within the terms of § 1512.

*Id.*

Central to the holding in *King*—and central, therefore, to Kulczyk's argument—is the interplay between § 1512 and 18 U.S.C. § 1503. Section 1512 was enacted in 1982 as the major provision of the Victim and Witness Protection Act ("VWPA"). Before 1982, witness tampering was covered by § 1503, which defined the offense of "Influencing or injuring officer, juror or witness generally." 18 U.S.C. § 1503 (1948). In addition to specifying the types of actions toward court officers, jurors and witnesses that it covers, § 1503 also contains a residual clause that criminalizes corrupt attempts to influence, obstruct or impede

the due administration of justice. The Ninth Circuit held, before 1982, that this residual clause applies to cases where the defendant provided the witness with a false story to give to a grand jury. *United States v. Gates,* 616 F.2d 1103, 1107 (9th Cir.1980).

At the same time that Congress enacted the VWPA, it amended § 1503 by removing all mention of witnesses from that section. Accordingly, § 1503 now applies by its terms only to jurors and court officers. 18 U.S.C. § 1503 (1982). Congress did not, however, change that section's residual clause.

Having deleted all reference in § 1503 to witnesses, Congress then passed § 1512, which is entitled "Tampering with a witness, victim, or an informant." That section specifies the types of tampering that it reaches; in addition to "misleading conduct," it also covers tampering attempted or achieved by means of killing, intimidation, physical force, threats, and intentional harassment. 18 U.S.C. § 1512(a), (b), and (c). The Second Circuit ruled that, given this enumeration and the lack of a residual or catchall clause, § 1512 was not intended to reach "conduct such as that proven here, i.e., the nonmisleading, nonthreatening, nonintimidating attempt to have a person give false information to the government...." *King,* 762 F.2d at 238.[5]

Kulczyk, relying on the reasoning of the Second Circuit, argues that, because he did not mislead any of the witnesses, and because § 1512 does not cover non-coercive, non-deceptive tampering, the convictions on Counts 13, 15, and 17 must be reversed. The government responds, first, that the evidence indicates that Kulczyk did in fact mislead the witnesses, and second, that even if he merely "urged and advised" the witnesses to lie, that conduct is covered by § 1512. We address the government's arguments in reverse order.

5. As the *King* court noted, the Senate version of § 1512 originally contained a catchall clause. That provision would have extended the Act's coverage to corrupt attempts to influence, obstruct or impede the enforcement and prosecution of federal law—language that closely resembles the residual clause of § 1503. The Second Circuit reasonably interpreted the fact that this provision was dropped from the final version to mean that Congress did not intend § 1512 "to reach modes of conduct other than those there enumerated." *King,* 762 F.2d at 238.

**1.** *"Urging and advising" false testimony and § 1512*

■ Under *King*, merely urging and advising a witness to give false testimony is not covered by § 1512. In *United States v. Bordallo*, 857 F.2d 519, 524–26 (9th Cir. 1988), *amended* 872 F.2d 334, *cert. denied*, — U.S. —, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989), this Court stated that *King* appears to conflict with the Fifth Circuit's decision in *United States v. Wesley*, 748 F.2d 962 (5th Cir.1984), *cert. denied sub nom. Cooper v. United States*, 471 U.S. 1130, 105 S.Ct. 2664, 86 L.Ed.2d 281 (1985). This Court in *Bordallo* found it unnecessary to resolve this conflict, as the conduct at issue in that case supported a conviction under either *King* or *Wesley*. *Bordallo*, 857 F.2d at 525.

The government argues that Kulczyk's conduct supports the witness tampering convictions under either *King* or *Wesley*, and that we therefore do not have to decide which standard is correct. We disagree. After a careful reading of the cases, we believe that *Wesley* does not stand for the proposition for which the government cites it. In *Wesley*, the appellant, who had been convicted under both § 1503 and § 1512, argued that his conviction under both statutes violated the double jeopardy clause. Specifically, Wesley argued that:

> because [the target of his tampering] was a potential witness and § 1512 explicitly proscribes threats against potential witnesses, *he can be convicted only of violating § 1512, but not for ob-*

structing the due administration of justice.

*Wesley*, 748 F.2d at 963 (emphasis added). The issue, then, was whether the convictions under § 1503, based on urging and advising false testimony, were proper. The Fifth Circuit held that they were, stating:

> If urging a witness to commit perjury is not prohibited by § 1512, and if witnesses have been removed entirely from the scope of § 1503, then the conduct with which Wesley is charged would violate neither section. There is simply no indication that, by enacting § 1512 to broaden the protection afforded witnesses, Congress intended to create such a gap in the statutory protection already available under § 1503.

*Id.* at 964. While the opinion does not indicate what conduct gave rise to the convictions, it provides no support for the proposition that § 1512 covers urging a witness to commit perjury.

Properly understood, then, *Wesley* held that "urging and advising" a witness to testify falsely is conduct covered by the residual clause of § 1503. The Second and Fifth Circuits thus disagree as to whether non-coercive, non-deceptive tampering may be punished under § 1503.[6] Furthermore, given the precise enumeration of unlawful methods of tampering set out in § 1512—none of which encompasses or even resembles "urging and advising" false testimony—the position that § 1512 covers such tampering is contrary to the plain meaning of the statute. Accordingly, we agree with the Second Circuit's position, and hold that non-coercive, non-deceptive conduct is not covered by § 1512.[7]

---

**6.** On that issue, the Ninth Circuit agrees with the Fifth Circuit. In *United States v. Lester*, this Court held that a defendant who attempted to hide a witness was properly convicted under the residual clause of § 1503. 749 F.2d 1288 (9th Cir.1984). In so holding, the Court wrote:

> [W]e believe that *Congress enacted section 1512 to prohibit specific conduct comprising various forms of coercion of witnesses*, leaving the omnibus provision of section 1503 to handle more imaginative forms of criminal behavior, including forms of witness tampering, that defy enumeration.

*Id.* at 1294 (emphasis added). We note that, given *Lester*, there is no statutory "gap" in the Ninth Circuit between §§ 1503 and 1512 pre-

venting the prosecution of non-coercive, non-deceptive witness tampering. *See Wesley*, 748 F.2d at 964 (no gap because § 1503 covers such conduct); *but see King*, 762 F.2d at 238 ("lacuna in the legislative scheme" is for Congress, not the courts, to fix). As Kulczyk concedes, under *Lester*, he could have been convicted of violating § 1503.

**7.** As we noted above, § 1512 was amended in 1988 to encompass cases where the defendant "corruptly persuades" the witness to testify falsely. 18 U.S.C. § 1512 (1988). While the new language appears to be directed at the sort of activity charged in Kulczyk's indictment, the government's argument that the amendment in-

### 2. *Kulczyk's actions and the "misleading conduct" provision*

■ It follows that, in order to support a conviction under § 1512, the government must prove that the alleged conduct constitutes one of the types of tampering specified in that section. For purposes of this case, that means that the evidence adduced at trial must show that Kulczyk engaged in misleading conduct with the intent to influence the testimony of Martin, Bowen, and Williams. "Misleading conduct" is defined to include "knowingly making a false statement." 18 U.S.C. § 1515(a)(3)(A). The government argues that Kulczyk made misleading statements to each witness, thereby justifying conviction under that provision. The appellant, by contrast, argues that he did nothing more than request that the witnesses lie to the FBI investigators, the grand jury, and at trial. The question, then, is whether Kulczyk's conduct is properly characterized as "urging and advising" false testimony, as the appellant contends, or as misleading conduct toward the witnesses, as the government argues.

#### a. Count 13—Larry Martin

The indictment alleged that Kulczyk asked Martin to tell investigators and the juries that he had made two trips between the normal site of the "stolen" machinery and the place from which Kulczyk claimed they were stolen. There can be little question that Martin was aware that he had only made the one trip. Indeed, when asked at trial why he told the FBI that he made two trips, Martin answered that he lied because Kulczyk asked him to. Based on that testimony, it appears that Kulczyk merely urged Martin to lie to the officials.

The government argues, however, that Kulczyk did not expressly ask Martin to lie; rather, the government suggests that the appellant "very subtly and coyly" approached Martin "as if to prompt his recollection" to the effect that he had in fact made two trips. Such a "recollection-prompting approach," the government asserts, differs from an outright request to lie, and in fact constitutes an attempt to mislead the witness. We reject this characterization.

We recognize that, at some point, expressly asking a witness to lie, and engaging in misleading conduct toward that person, may be difficult to distinguish. One could imagine a case, for example, where a defendant approaches a witness and attempts to prompt a false recollection of an event obscured by the passage of time and imperfect perception. No doubt, the government believes that is what happened here. But to accept that position would justify charges under § 1512 any time a defendant asked a witness to lie merely by characterizing that request as an attempt to prompt a false recollection. The issue is wholly dependent on the facts of each case, and here there is simply no support for the argument that Kulczyk did anything other than ask the witnesses to lie. We find it especially significant that all three of the witnesses approached by Kulczyk knew that he was asking them to lie. The testimony of the three men at trial indicates that the events were clear enough in their minds that the proffered distinction between prompting a false recollection and asking them to lie is untenable. Kulczyk asked Martin to tell a story that Martin knew to be false. Accordingly, Kulczyk did not attempt to mislead Martin, and the conviction under § 1512 must be reversed.

#### b. Count 15—Robert Bowen

Count 15 of the indictment charged that Kulczyk asked Bowen to testify that he and the appellant were working on a job together during the period when the machines were supposedly stolen. This, too,

dicates a "pre-existing legislative intent that § 1512, as opposed to § 1503, addresses the mere advising and urging of a witness to lie" cannot be taken seriously. Ex post facto considerations aside, one could just as easily argue that the subsequent amendment reflects a congressional recognition of the fact that the pre-

amendment § 1512 did not reach such conduct. In any case, the amendment has absolutely no bearing on the merits of Kulczyk's appeal, and is mentioned here only to alert subsequent courts that our opinion is limited to the pre-amendment version of § 1512.

was a total fabrication, and it is impossible that Bowen did not know it was false when Kulczyk asked him to adjust his testimony accordingly. The government again argues that Kulczyk was attempting to prompt an inaccurate recollection. What he in fact did was ask Bowen knowingly to tell a lie. This conviction, too, must be reversed.

### c. Count 17—Les Williams

■ The government's argument that Kulczyk misled Williams by making false promises of financial reward for Williams' cooperation is more persuasive. One could argue that such promises constitute misleading behavior intended to influence Williams' testimony. The statute, however, appears to require that the defendant mislead the witness as to the substance of his testimony. It is clear from the record that Williams did not believe the story Kulczyk asked him to tell—namely, that Williams' father was responsible for stealing the equipment. This charge, then, reduces to a claim that Kulczyk offered to reward Williams for falsifying his testimony. The Second Circuit in *King* held such behavior to be non-deceptive and non-coercive, and therefore not covered by § 1512. *King*, 762 F.2d at 236–37.

■ As noted above, however, Count 17 also charged that Kulczyk threatened to have Williams killed if he did not cooperate. While Kulczyk concedes that Williams testified at trial that he was in fact so threatened, Kulczyk argues that we cannot be sure whether the jury relied on that testimony in reaching a guilty verdict on this Count. That argument misconstrues our inquiry. We will not disturb a verdict when there is evidence upon which the jury could have relied in reaching it. Because intimidation and threats are expressly covered by § 1512, and because there was evidence to support the charge, Kulczyk's conviction on Count 17 is affirmed.

We note from the record that Kulczyk was only given actual prison time on the two convictions—Counts 13 and 15—that we reverse. The sentences on the eleven counts of mail fraud and Count 17 were suspended by the district court. Accord-

ingly, we exercise our authority under 28 U.S.C. § 2106 and remand the case to the district court for resentencing. *See United States v. Hagler*, 709 F.2d 578, 579 (9th Cir.), *cert. denied*, 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983); *United States v. Jordan*, 895 F.2d 512, 515–16 (9th Cir. 1989)."

### B. MOTION FOR A NEW TRIAL

■ The appellant moved for a new trial on the grounds of newly discovered evidence. He argued that he discovered after the verdict that a tape recording relied upon by the government at trial had been altered, and that he located two potential witnesses who were unavailable at the time of trial. The district court denied the motion on the grounds that the appellant had not exercised due diligence in either discovering the evidence sooner, or informing the judge of its unavailability so that appropriate action (e.g. a continuance or, in the case of the witnesses, a subpoena) could be taken. Furthermore, the judge found that the evidence would not probably result in an acquittal.

■ This Court reviews a decision denying a motion for a new trial based on newly discovered evidence for an abuse of discretion. *United States v. Lopez*, 803 F.2d 969, 977 (9th Cir.1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 530 (1987). As the district judge noted, to prevail on a Rule 33 motion for a new trial, the movant must satisfy a five-part test:

(1) the evidence must be newly discovered;

(2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;

(3) the evidence must be material to the issues at trial;

(4) the evidence must be neither cumulative nor merely impeaching; and

(5) the evidence must indicate that a new trial would probably result in acquittal.

*Id.* Applying this test, the district judge's denial of the motion was well within his discretion.

The appellant's failure to inform the judge before or at least during the trial

that he was unable to locate two witnesses indicates a lack of due diligence. As to the tapes, the appellant argues that evidence that the government altered the tapes would "seriously impeach" Williams' testimony. Under the test, however, evidence that would merely impeach a witness cannot support a motion for a new trial. Furthermore, accepting the appellant's representations as true, neither piece of evidence would likely result in an acquittal. The district judge did not abuse his discretion in denying the motion for a new trial.

We reverse the convictions on Counts 13 and 15, affirm the conviction on Count 17, affirm the order denying the motion for a new trial, and remand for resentencing consistent with this opinion.